IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT OLLIE,<br>No. B87455,<br><br>        Plaintiff,<br><br>  vs.<br><br>RICHARD HARRINGTON,<br>RYAN DAVIS,<br>TIMOTHY VEATH,<br>LT. ROBERT HUGHES,<br>LT. KEVIN RIECHERT,<br>C/O ALEX MOLL,<br>SGT. HEIMAN, and<br>LORI OAKLEY,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 14-cv-00608-JPG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Robert Ollie, an inmate currently housed in Pontiac Correctional Center ("Pontiac"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on events that occurred while he was at Menard Correctional Center ("Menard").

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, on September 15, 2013, Plaintiff observed C/O Ryan Davis treating an inmate in a neighboring cell in an "unprofessional manner," yelling and cursing at the inmate, and subsequently yelling and cursing at Plaintiff. C/O Davis threated that if Plaintiff did not be quiet he would be sent to segregation. Plaintiff immediately began to draft a grievance against Davis. When Davis saw what Plaintiff was doing, he threatened that he would put Plaintiff somewhere where Plaintiff could not write grievances: behind steel doors. Plaintiff then submitted a "kite"—a request to speak to an officer—regarding C/O Davis's behavior. In retaliation for the grievance and kite, C/O Davis, without explanation, ordered that Plaintiff be taken to segregation. Sgt. Heiman, C/O Moll and other guards then escorted Plaintiff to segregation. When asked why, Heiman and Moll replied that they did not know, they were merely ordered to take Plaintiff to segregation.

Plaintiff was taken to a segregation cell without bedding, and he was not given any hygiene products for two days. Later that evening, Plaintiff was served with what he

characterizes as a "bogus, false and fabricated" disciplinary report lodged by C/O Davis. Plaintiff asked the unidentified guard for a pen so he could write down witnesses he wanted to call in his defense, but the guard ignored his request.

On September 17, 2013, Plaintiff appeared before Lt. Veath, chairman of the Adjustment Committee, for a hearing on the disciplinary report issued by C/O Davis. Plaintiff pleaded not guilty, arguing that the report was fabricated in retaliation for filing a grievance; he also requested that witnesses be called. Lt. Veath denied the request for witnesses, noting that witnesses had not been requested in advance. Veath was not swayed when Plaintiff explained that he had been denied a pen and was, therefore, unable to make such a request. Plaintiff's request for a continuance was also denied. On September 18, 2013, Plaintiff was found guilty of "intimidation or threats," insolence, and disobeying a direct order, for which he received a six-month demotion to C grade, five months in segregation, and restricted commissary privileges for six months (Doc. 1-2, p. 23). Plaintiff further asserts that he was deprived of phone privileges and could not contact his attorney, which in turn deprived him of access to the courts (no additional details are provided). As a result of this disciplinary conviction, Plaintiff was moved to a segregation cell and "placed behind a steel door."

Plaintiff filed an emergency grievance regarding his disciplinary conviction, but Warden Harrington upheld the Adjustment Committee's decision. Plaintiff characterizes Harrington's ruling as agreeing with the retaliation and the denial of due process.

On or about September 23, 2013, C/O Moll escorted Plaintiff in handcuffs past C/O Davis. C/O Davis commented that he bet Plaintiff would not be filing any more grievances from behind that steel door. Plaintiff then asked Sgt. Heiman to summon the shift lieutenant so that he could complain about C/O Davis's continued harassment. Davis then threatened Plaintiff again.

Plaintiff immediately started drafting another grievance against C/O Davis. Davis in turn issued another disciplinary ticket to Plaintiff, accusing Plaintiff of "intimidation and threats," and assault (Plaintiff running his shoulder into Davis as they passed on the gallery). Again, Plaintiff asserts that the disciplinary ticket is unfounded.

On September 25, 2013, Plaintiff appeared before Lt. Veath, chairperson of the Adjustment Committee. Veath refused Plaintiff's request to view surveillance video that would show that Davis's allegations were false. Plaintiff's request to call witnesses, including C/O Moll and Sgt. Heiman, was denied. Plaintiff made separate requests for Lt. Riechert of Internal Affairs to investigate and view the surveillance video, to no avail. On October 10, 2013, Plaintiff appeared before the Adjustment Committee for a second hearing, at which time Lt. Veath told Plaintiff that Sgt Heiman and others stated that they had not seen anything, and C/O Moll had backed up C/O Davis's allegations (*see* Doc. 1-2, p. 24 (summary of witness interviews)). Plaintiff was found guilty of the disciplinary violations and punished by being demoted to C grade for one year, being sent to segregation for one year, having his commissary privileges restricted for one year, and losing contact visits for six months (*see* Doc. 1-2, p. 22). Warden Harrington again approved the Adjustment Committee decision (*id.*).

Plaintiff filed a grievance taking issue with his second disciplinary conviction, but the grievance was denied by Warden Harrington, along with "Grievance Officer" Oakley (who works as a Clinical Services Counselor). Plaintiff contends Harington and Oakley thereby agreed with—condoned—the retaliatory and false disciplinary report issued by C/O Davis. Warden Harrington, Counselor Oakley, Internal Affairs Officer Riechert and Lt. Hughes, who also sits on the Adjustment Committee, all declined to reinvestigate the falsity of C/O Davis's

charges and Plaintiff's second disciplinary conviction. Multiple requests for relief were either ignored or otherwise went unanswered.

On March 5, 2014, along with many other prisoners, Plaintiff was transferred to Pontiac Correctional Center, without his segregation time being reduced. Plaintiff takes issue with his transfer because he had been held in the medium security portion of Menard and Pontiac was a high security facility. Plaintiff further contends that he does not qualify for placement at a high security facility.

Plaintiff also claims that Warden Harrington and Counselor Oakley intentionally, with deliberate indifference, transferred him to Pontiac in order to postpone and/or deny Plaintiff "urgent medical treatments" for Hepatitis C—treatments that were scheduled to be given at Menard on an unspecified, upcoming date.

Relative to the conditions of segregation at Menard, Plaintiff further alleges that the prison administration and unidentified guards deprived him of "basic human needs, and served him smaller portions of food than general population inmates received; sometimes he was served contaminated food. As a result, Plaintiff claims he suffered from malnourishment, weight loss, stomach cramps and other side effects. In addition, unidentified guards maliciously and sadistically denied Plaintiff basic hygiene products, including soap, toilet paper, lotion, toothpaste, a tooth brush, and a comb and hairbrush. In addition, Plaintiff complains that the segregation cell was small, unventilated, and lacking proper heating and cooling.

Each defendant is sued in his individual and official capacity. Plaintiff prays for compensatory and punitive damages, as well as injunctive relief.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into four counts, mirroring the complaint. The parties and the Court will use these

designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1: Defendants Harrington, Davis, Moll, Heiman, Veath, Oakley, Hughes and Riechert retaliated against Plaintiff for filing grievances, in violation of the First Amendment;**
>
> **Count 2: Defendants Harrington, Davis, Moll, Heiman, Veath, Oakley, Hughes and Riechert denied Plaintiff due process, in violation of the Fourteenth Amendment;**
>
> **Count 3: Defendants Harrington, Davis, Veath, Oakley, Hughes and Riechert were deliberately indifferent to Plaintiff's health relative to (a) Hepatitis C treatment, (b) nutrition, (c) basic hygiene, and (d) conditions of confinement in segregation, all in violation of the Eighth Amendment; and**
>
> **Count 4: Defendants Harrington, Davis, Moll, Heiman, Veath, Oakley, Hughes and Riechert intentionally inflicted emotional distress upon Plaintiff, in violation of Illinois law.**

## Discussion

### Personal Involvement

Liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). A defendant must have caused or participated in the violation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Thus, the doctrine of *respondeat superior*—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations can suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002). "Supervisory liability will be found … if the

supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). "An official satisfies the personal responsibility requirement of [Section] 1983 if she acts or *fails* to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982) (emphasis added); *Fillmore v. Page*, 358 F.3d 496, 505 -506 (7th Cir. 2004). With all that said, merely knowing about a constitutional violation and failing to cure it is generally insufficient; only persons who cause or participate in the violations are responsible. *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005); *see also Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006), *overruled on other grounds, Hill v. Tangherlini,* 724 F.3d 965, 967 n. 1 (7th Cir. 2013). Thus, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [alleged constitutional] violation." *George v. Smith*, 506 F.3d 605, 609 (7th Cir. 2007).

All eight defendants are named in all counts of the complaint, with the exception of Count 3. As summarized above, the narrative of the complaint illustrates that Plaintiff links the initial retaliatory act by C/O Davis (writing the first disciplinary report) to all of the other events, ending with Plaintiff's transfer from Menard to Pontiac. In essence, Plaintiff perceives a conspiracy—it is alleged that the defendants acted "in agreement" with one another, "backing" C/O Davis in retaliating against Plaintiff (Doc. 1, p. 24).[1]

The allegations of conspiracy are conclusory and insufficient under the *Twombly* pleading standard. "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police*

---

[1] "[C]onspiracy is not an independent basis of liability in [Section] 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).

*Dep't,* 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir.1999)).

The complaint does not describe a meeting of the minds; rather, all Plaintiff offers is the fact that each defendant participated in some way in the grievance process or had some contact with Plaintiff in a general causal chain of events. For example, after Davis wrote the initial disciplinary report, Sgt. Heiman and C/O Moll escorted Plaintiff to segregation (or at least to where he was held pending his disciplinary hearing). Heiman and Moll said they did not know why Plaintiff was being moved, only that they were ordered to move him. Clearly, there is nothing from which to reasonably discern a conspiracy with Davis. Similarly, Lt. Veath and Warden Harrington were drawn into the situation only in their respective roles in the administrative disciplinary process. A conspiracy cannot stem merely from the fact that they did not take Plaintiff's side in the dispute. The same can be said for the events surrounding the second disciplinary report issued by Davis, the conditions of confinement, and Plaintiff's transfer to Pontiac. The complaint describes merely a chain of events, not a conspiracy. Each claim will otherwise be addressed.

### Count 1

Count 1 alleges that all defendants retaliated against Plaintiff for filing grievances in violation of the First Amendment. The seminal events are the grievances Plaintiff lodged against C/O Davis.

To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir.2012) (internal citations omitted).

Retaliation for filing a grievance violates the First Amendment. *Id*. The issuance of a disciplinary report could be viewed as sufficient to chill one's First Amendment activities. Whether the filing of grievances against C/O Davis motivated Davis and the other defendants is the key question.

Taking the allegations as true, a claim has been stated against C/O Davis. Davis's threatening statements to Plaintiff as Plaintiff was drafting the grievances, followed by the issuance of disciplinary tickets, reasonably makes retaliation plausible, not merely possible, which is the pleading threshold under *Twombly,* 550 U.S. at 557. Therefore, Plaintiff's retaliation claim against C/O Davis shall proceed relative to the two disciplinary reports issued to Plaintiff.

As already discussed, Plaintiff has failed to state any conspiracy or link extending Davis's retaliatory conduct to the other defendants, Warden Harrington, Adjustment Committee Chairperson Veath, Adjustment Committee Chairperson Lt. Robert Hughes, Internal Affairs Officer Kevin Riechert, C/O Moll, Sgt. Heiman or Counselor Oakley. Each of these defendants merely performed their respective role in the grievance process without any suggestion of an agreement with Davis or each other to retaliate against Plaintiff. Therefore, Defendants Harrington, Veath, Hughes, Riechert, Moll, Heiman and Oakley will all be dismissed from Count 1 without prejudice.

**Count 2**

Count 2 alleges that Defendants Harrington, Davis, Moll, Heiman, Veath, Oakley, Hughes and Riechert denied Plaintiff due process in connection with his two disciplinary hearings, in violation of his right to due process under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment, by its very terms, applies only to deprivations of life, liberty and property.  *See Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011).  Because Plaintiff's good-time credits were never revoked, he cannot claim a right to substantive due process under *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  Instead, the procedural due process allegations must be analyzed under the approach of *Sandin v. Conner*, 515 U.S. 472 (1995).  Under *Sandin*, a prisoner is entitled to procedural due process protections before segregation imposing "an atypical and significant hardship" (*Id*. at 486), which includes "conditions materially more onerous than 'the ordinary incidents of prison life.' " *Marion*, 641 F.3d at 875 (quoting *Sandin*, 515 U.S. at 484).  The relevant comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which the prisoner is actually held.  *See Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005).[2]

The  two-day period Plaintiff was held in administrative detention prior to the first disciplinary hearing on September 17, 2013, was too brief, even if the conditions were to meet the *Sandin* standard—the denial of a mattress and unspecified hygiene products for two days is insufficient to constitute a liberty interest.  Moreover, temporary confinement in investigative status does not implicate a liberty interest*.  See Lekas*, 405 F.3d at 613 (citing *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)).

---

[2] An extreme "frame-up," where no subsequent procedural fairness could uncover the truth, can constitute a substantive due process violation triggering the due process protections under *Wolff*. *See Langerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006), but the complaint does not sufficiently plead such a situation.  Any such claim, particularly with respect to C/O Davis, should be considered dismissed without prejudice.

The conditions described in Plaintiff's first and second stints in disciplinary segregation do, however, suggest that the conditions could be worse than at a maximum security facility—particularly relative to the diminished food portions and tainted food. Nevertheless, Plaintiff's September 18, 2013, disciplinary conviction only imposed placement in segregation for five months. Even where extreme conditions are imposed in segregation, a term of six months has been found insufficient to trigger due process protections. *See Lekas*, 405 F.3d at 613 (citing *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)).

The October 10, 2013, disciplinary conviction imposed a one-year term in segregation, which is long enough to trigger a right to procedural due process. In a situation like this, involving being sent to segregation under onerous conditions of confinement, due process only requires that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted); *see also Wolff v. McDonnell,* 418 U.S. 539 (1974); *Wilkinson v. Austin,* 545 U.S. 209, 224-229 (2005) (discussion what level of process is due relative to a *Sandin*-based liberty interest). "[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." "[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added).

The documentation attached to the complaint shows that the Adjustment Committee interviewed inmate Rufus Neal, Sgt. Heinman, C/O Mezo, and C/O Moll (Doc. 1-2, p. 24). Neal Heinman and Mezo did not see any assault by Plaintiff upon C/O Davis, which is not to say that

the assault did not occur.  C/O Moll saw Plaintiff "bump" C/O Davis, which constitutes "some evidence" in support of the disciplinary conviction.

In this situation, with such a lenient standard of review, even though material exculpatory evidence must be disclosed in a prison disciplinary proceeding (*see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011)), the failure to disclose the video amounts to only harmless error (*Id*.).  It is not within the province of this Court to reweigh the evidence or make credibility determinations.  *See Hill*, 472 U.S. at 455.  Furthermore, Plaintiff's conclusory allegations of some sort of conspiracy between prison staff is also insufficient to show that he was denied due process.  Therefore, Plaintiff has essentially pleaded himself out of Court on his due process claim regarding Defendant Veath relative to the October 2013 disciplinary hearing and decision.

The Court further notes that no substantive or procedural due process right exists for writing a false disciplinary report and/or malicious prosecution.  *See Langstrom*, 463 F.3d at 625.  Plaintiff's claim against C/O Davis rests solely upon the retaliation claim in Count 1.

Relative to Plaintiff's allegations that his subsequent efforts to overturn his disciplinary conviction, no due process claim has been recognized with respect to grievances that were ignored or denied.  *See Owens v. Hinsley*, 635 F.3d 950, 953–54 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008).  And, merely ruling against a prisoner's grievance does not cause or contribute to the underlying constitutional violation.  *See George v. Smith*, 506 F.3d 605, 609-10 (7th Cir. 2007).  As already discussed, Plaintiff has failed to plead sufficient personal involvement by the other defendants named in Count 2, Defendants Warden Harrington, Lt. Hughes, Lt. Riechert, C/O Moll, Sgt. Heiman and Counselor Oakley.  Count 2 will therefore be dismissed with prejudice, as there is no apparent way to re-plead this claim to state a viable claim.

**Count 3**

Count 3 alleges that Defendants Harrington, Davis, Veath, Oakley, Hughes and Riechert were deliberately indifferent to Plaintiff's health relative to (a) Hepatitis C treatment, (b) nutrition, (c) basic hygiene, and (d) conditions of confinement in segregation, all in violation of the Eighth Amendment.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Inmates are protected against prison officials being deliberately indifferent to adverse conditions that deny "the minimal civilized measure of life's necessities," *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citation omitted), including adequate sanitation and personal hygiene items, and heating, cooling and ventilation. See Budd v. Motley, 711 F.3d 840, 842 - 43 (7th Cir. 2013). Such adverse conditions may violate the Eighth Amendment individually or due to the combined effect, as long as they deny "a single, identifiable human need." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991). Prison officials can also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate." *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003).

The allegations in the complaint suggest that transferring Plaintiff from Menard to Pontiac may have somehow delayed Plaintiff's scheduled Hepatits C treatment program.

Although delayed medical treatment may violate the Eighth Amendment, there is insufficient information pleaded to move this claim from the possible to the plausible, as required under the *Twombly* pleading standard.  Plaintiff does not indicate what happened at Pontiac—whether there was a delay or adverse impact.  Furthermore, the allegation is conclusory and offers no details regarding how Warden Harrington and Counselor Oakley were involved.  Aside from the insufficient allegations of some sort of conspiracy, there is no other way to tie Defendants Davis, Veath, Hughes and Riechert to this situation.

The allegations regarding inadequate nutrition, the denial of hygiene items, and the overall conditions in segregation (such as heating, cooling and ventilation), are attributed to the prison administration and unidentified guards, not Defendants Harrington, Oakley, Davis, Veath, Hughes and Riechert.  A policy or practice attributable to Warden Harrington is also not sufficiently alleged.  For these reasons, Count 3 will be dismissed without prejudice.

**Count 4**

In Count 4, Plaintiff alleges a supplemental state law claim against Defendants for intentional infliction of emotional distress relative to Counts 1-3.  If there is federal jurisdiction, then, theoretically, the Court can exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a). At present, only Count 1, the First Amendment retaliation claim against C/O Davis, is the only viable claim and basis for federal jurisdiction.  Therefore, Count 4 may only proceed against C/O Davis relative to intentional infliction of emotional distresss stemming from the two disciplinary reports issued by Davis.  Count 4 shall, therefore, be permitted to proceed in this limited respect.

**Disposition**

IT IS HEREBY ORDERED that, for the reasons stated, Defendants **RICHARD HARRINGTON**, **TIMOTHY VEATH**, **LT. ROBERT HUGHES**, **LT. KEVIN RIECHERT**, **C/O ALEX MOLL**, **SGT. HEIMAN** and **LORI OAKLEY** will all be **DISMISSED** from **COUNT 1** without prejudice.  **COUNT 1**, the First Amendment retaliation claim regarding false disciplinary reports, shall **PROCEED** against **C/O RYAN DAVIS**.

IT IS FURTHER ORDERED that **COUNT 2**, Fourteenth Amendment due process claims against Defendants **RICHARD HARRINGTON**, **RYAN DAVIS**, **TIMOTHY VEATH**, **LT. ROBERT HUGHES**, **LT. KEVIN RIECHERT**, **C/O ALEX MOLL**, **SGT. HEIMAN** and **LORI OAKLEY**, is **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that **COUNT 3**, an Eighth Amendment claim against Defendants **RICHARD HARRINGTON**, **RYAN DAVIS**, **TIMOTHY VEATH**, **LT. ROBERT HUGHES**, **LT. KEVIN RIECHERT** and **LORI OAKLEY**, is **DISMISSED** without prejudice.

IT IS FURTHER ORDERED that **COUNT 4**, a supplemental claim regarding intentional infliction of emotional distress, is **DISMISSED** without prejudice relative to Defendants **RICHARD HARRINGTON**, **TIMOTHY VEATH**, **LT. ROBERT HUGHES**, **LT. KEVIN RIECHERT**, **C/O ALEX MOLL**, **SGT. HEIMAN** and **LORI OAKLEY**. **COUNT 4** shall **PROCEED** against **C/O RYAN DAVIS** relative to **COUNT 1**.

The Clerk of Court is, accordingly, **DIRECTED** to terminate Defendants **RICHARD HARRINGTON**, **TIMOTHY VEATH**, **LT. ROBERT HUGHES**, **LT. KEVIN RIECHERT**, **C/O ALEX MOLL**, **SGT. HEIMAN** and **LORI OAKLEY** from this case.

The Clerk of Court is **DIRECTED** to prepare for Defendant **C/O RYAN DAVIS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service upon Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant C/O Davis is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge Philip M. Frazier for further pre-trial proceedings, including Plaintiff's motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: July 14, 2014**                        *s/ J. Phil Gilbert*
                                                        **United States District Judge**